IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

WILLIAM E. PALMER PLAINTIFF

v. Civil No. 14-5180

SHERIFF TIM HELDER; NURSE RHONDA BRADLEY; DR. HOWARD; and DR. MULLINS DEFENDANTS

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

This is a civil rights action filed by the Plaintiff pursuant to 42 U.S.C. § 1983. He proceeds *pro se* and *in forma pauperis.*

Plaintiff is now incarcerated in the North Central Unit of the Arkansas Department of Correction (ADC). At the times relevant to this case, Plaintiff was incarcerated in Washington County Detention Center (WCDC).

Plaintiff maintains the Defendants violated his constitutional rights by denying him adequate medical attention and by the conditions he was confined under. Defendants have filed a Motion for Summary Judgment (Doc. 44). Plaintiff has responded to the Motion (Docs. 49-50 & 53).

This is a non-consent case in which a trial by jury has been demanded. The case has been referred to me by Chief United States District Judge P. K. Holmes, III, for issuance of this report and recommendation on the Summary Judgment Motion.

AO72A
(Rev. 8/82)

## I. BACKGROUND

On January 16, 2014, Plaintiff was prescribed Tramadol,[1] spironolactone,[2] and furosemide,[3] by Dr. Auley of the Northwest Medical Center. *Doc.* 49 at pg. 144. Plaintiff was booked into the WCDC on January 18, 2014. Plaintiff has cirrhosis of the liver, kidney disease, and pancreatic disease. *Defts' Ex.* A at 22 & 31. Plaintiff testified he has a rare case of Klinefelter Syndrome and his body does not produce testosterone. *Id.* at 37.

When he was booked in, Plaintiff was on the medications prescribed by Dr. McAuley. *Defts' Ex.* A at 12.[4] He was to take the medication daily. *Id.*

Plaintiff testified that Dr. Howard refused to give him the same medication. *Defts' Ex.* A at 12. From January 18, 2014, until March 7 or 8, 2014, Plaintiff states he was being provided the wrong medication or the wrong dosages. *Id.* at 29 & 33. This was causing him to bloat, have constipation, and to have nose bleeds. *Id.* at 29 & 32. Once he got on the correct medication, Plaintiff testified he wasn't "really" having any more problems. *Id.*

Jail medical records indicate Plaintiff was prescribed furosemide and potassium by Dr. Howard on January 21, 2014. *Doc.* 49 at 73. Plaintiff was transported to Washington Regional Medical Center at 11:52 p.m. on January 24, 2014, due to complaints of abdominal pain. *Id.* at

[1] Tramadol "is used to relieve moderate to moderately severe pain." It is a narcotic analgesic. http://www.nlm.nih.gov/medlineplus/druginfo/meds/a695011.html (accessed June 29, 2015).

[2] "Spironolactone is used to treat certain patients with hyperaldosteronism (the body produces too much aldosterone, a naturally occurring hormone); low potassium levels; heart failure; and in patients with edema (fluid retention) caused by various conditions, including liver, or kidney disease. It is also used alone or with other medications to treat high blood pressure." http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682627.html (accessed June 29,2015) .

[3] "Furosemide is used alone or in combination with other medications to treat high blood pressure. Furosemide is used to treat edema (fluid retention; excess fluid held in body tissues) caused by various medical problems, including heart, kidney, and liver disease. http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682858.html (accessed June 29, 2015).

[4] Typically, when an inmate is booked in, a medical questionnaire is completed. No such document appears in the summary judgment record. The Court has seen these documents in many other cases involving incarcerations at the WCDC.

74, 140 & 143. His discharge diagnosis was "liver cirrhosis." *Id.* at 136. His discharge instructions included staying away from medicines that can harm the liver including acetaminophen (brand name, among others, Tylenol®). *Id.* at 140.

Plaintiff had a follow-up appointment with Dr. Auley on January 28, 2014. *Doc.* 49 at 146. It was noted that Plaintiff had an umbilical hernia. *Id.* Plaintiff was prescribed tramadol, furosemide, lactulose,[5] and spironolactone. *Id.* at 148.

On January 28, 2014, jail records indicate Plaintiff was given a prescription for Aldactone®.[6] *Doc.* 49 at 74. On February 5, 2014, a prescription for Aleve®[7] was added. *Id.*

On February 13, 2014, Plaintiff was transported to Washington Regional Medical Center for complaints of kidney stones and blood in his urine. *Id.* at 76. Nurse Vickery offered Plaintiff Ibuprofen or Tylenol but he would not take either because of his liver and kidney disease. *Doc.* 50 at 12. When he continued to complain and ask to go to the hospital, Nurse Vickery approved it "since she didn't have anything for him" at the WCDC. *Id.*

Tests revealed multiple renal stones. *Doc.* 49. at 151-52. It was also noted that Plaintiff had chronic pancreatitis. *Id.* A note was made to the "Corrections Physician" that Plaintiff needed to be "restarted on his spironolactone prescription as well as lactulose" and to followup with a gastroenterologist. *Id.* at 153.

---

[5]"Lactulose is a synthetic sugar used to treat constipation. It is broken down in the colon into products that pull water out from the body and into the colon. This water softens stools. Lactulose is also used to reduce the amount of ammonia in the blood of patients with liver disease. It works by drawing ammonia from the blood into the colon where it is removed from the body." http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682338.html (accessed June 29, 2015).

[6]Aladactone® is a brand name for spironolactone. http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682627.html (accessed June 29, 2015).

[7]Aleve® is the brand name for naproxen. Nonprescription naproxen is used to reduce fever and to relieve mild pain from headaches, muscle aches, arthritis, menstrual periods, the common cold, toothaches, and backaches. http://www.nlm.nih.gov/medlineplus/druginfo/meds/a681029.html (accessed June 29, 2015).

Written prescriptions were given for Flomax®,[8] Cipro®,[9] Percocet®,[10] ketorolac,[11] and Zofran® ODT.[12] *Doc.* 49 at 104, 156, & 158. In answers to interrogatories, Defendants indicate that the Flomax® prescription was not filled because he was already on that medication. *Id.* They state the Cipro® prescription was not filled because a urinalysis showed no white blood cells present. *Id.* The Percocet® prescription was not filled as it is a narcotic pain medication and they are only given in extenuating circumstances. *Id.* However, Defendants indicate Plaintiff had access to higher dosages of over-the-counter medication as a substitute. *Id.* Finally, Defendants indicate the Zofran® prescription was not filled because the jail keep Phenergan in stock and it is essentially the same medicine. *Id.*

Plaintiff asserts that not only did the jail medical staff not fill the prescriptions but he was also not referred to a gastroenterologist. *Doc.* 50 at pg. 10. On February 18, 2014, when Plaintiff asked where the prescriptions written by the hospital were, Nurse Bradley replied: "Sir, you are seeing our Dr. today because they did not write a script they only suggested these meds." *Id.* at 22.

---

[8] Floxmax® is a brand name for tamsulosin. "Tamsulosin is used in men to treat the symptoms of an enlarged prostate (benign prostatic hyperplasia or BPH) which include difficulty urinating (hesitation, dribbling, weak stream, and incomplete bladder emptying), painful urination, and urinary frequency and urgency." http://www.nlm.nih.gov/medlineplus/druginfo/meds/a698012.html (accessed June 29, 2015).

[9] Cipro® is a brand name for ciprofloxacin. "Ciprofloxacin is used to treat or prevent certain infections caused by bacteria." http://www.nlm.nih.gov/medlineplus/druginfo/meds/a688016.html (accessed June 29, 2015).

[10] Percocet® is a brand name for a combination of oxycodone and acetaminophen. "Oxycodone is used to relieve moderate to severe pain." http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682132.html (accessed June 29, 2015).

[11] "Ketorolac is used to relieve moderately severe pain, usually after surgery." http://www.nlm.nih.gov/medlineplus/druginfo/meds/a693001.html (accessed June 29, 2015.

[12] Zofram®ODT is a brand name for ondansetron. "Ondansetron is used to prevent nausea and vomiting caused by cancer chemotherapy, radiation therapy, and surgery." http://www.nlm.nih.gov/medlineplus/druginfo/meds/a601209.html (accessed June 29, 2015).

AO72A
(Rev. 8/82)

On various dates, Plaintiff was prescribed chlorheniramine,[13] milk of magnesia, cephalexin,[14] Aleve, stool softener, Mylanta, tramadol, Ibuprofen, A and D Ointment, hemorrhoid cream, sinus tablets, cough syrup, and Ultram®.[15] *See e.g., Doc.* 49 at 80-94. He was seen multiple times at nurse call and doctor call. *Id.*

Plaintiff also maintains he was not provided with his prescription medications for his liver and other health conditions. Despite having copies of his medical records, Plaintiff contends the medical staff continued to give him over-the-counter medications in direct conflict with his liver condition.

In March of 2014, Plaintiff testified his physician, Dr. McAuley, sent her nurse to the WCDC with Plaintiff's "medical records and medication procedures for adapting to [his] liver disease." *Doc.* 49 at 46. Plaintiff indicates he was put back on the correct medication. *Defts' Ex.* A at 28. On March 17, 2014, Plaintiff was prescribed Micro K®,[16] Lasix, and lactulose. *Doc.* 49 at 79. After that, Plaintiff did not experience any further problems. *Defts' Ex.* A at 29.

On April 16, 2014, when Plaintiff was being brought back to the WCDC after appearing in court, Plaintiff was in leg shackles, a belly chain, and hand restraints. *Doc.* 49 at 35. His leg shackles caught on a fixed door stop. *Id.* at 31 & 34. When he fell, Plaintiff testified he hit his knee, his hip, his shoulder, and his head. *Id.* at 36.

---

[13] A search of the United States National Library of Medicine produced no results for this medication. Plaintiff's medical chart indicates this is an over-the-counter medication that Plaintiff was given after complaining of a runny nose and sneezing. *Doc.* 49 at 80.

[14] Cephalexin is a cephalosporin antibiotic used to treat certain infections caused by bacteria such as pneumonia and bone, ear, skin, and urinary tract infections." http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682733.html (accessed June 29, 2015).

[15] Ultram® is a brand name for tramadol. http://www.nlm.nih.gov/medlineplus/druginfo/meds/a695011.html (accessed June 29, 2015).

[16] Micro K® is a brand name for potassium. http://www.nlm.nih.gov/medlineplus/druginfo/meds/a601099.html (accessed June 29, 2015).

AO72A
(Rev. 8/82)

Plaintiff almost passed out. *Defts' Ex*. A at 10.[17] Plaintiff was moved into a small room and the nurse called to inspect him. *Id.* For a few days, Plaintiff testified his shoulder, hip, knee, and leg were "bugging" him. *Id.* at 11. He indicated he had severe pain in his left leg running from his buttock and hip all the way down to his foot. *Id.* He states his foot was numb. *Id.*

In his deposition, Plaintiff clarified that he is not suing the Defendants because he fell but rather what happened afterwards. *Defts' Ex.* A at 17. First, he believes he should not have been moved until after he was examined by medical personnel. *Id.* However, he makes no argument that any of his problems were made worse as a result of the move or that the named Defendants were involved in or ordered the move. *Id.* Second, he believes he should have been taken to the hospital. *Id.* at 38.

In his summary judgment response, Plaintiff states if the officers would have followed protocol the returning inmates would have immediately been put in holding cells until their restraints could be removed. *Doc.* 50 at 11. He contends the officers' actions were in directed conflict with their training and contravened jail policy and orders. *Id.*

Plaintiff testified Nurse Vickery, no longer a named Defendant, prescribed Ibuprofen for pain relief but that he could not take it because of his liver and kidney disease. *Defts' Ex.* A at 11; *Doc.* 49 at 82. Nurse Vickery noted the Plaintiff had a mild abrasion along his left rib cage but no other complaints. *Doc.* 49 at 82. The following day, Nurse Vickery saw the Plaintiff again when he was complaining about being sore and not being able to raise his left arm above his head. *Id.* She examined the Plaintiff and noted no evidence of broken bones in his shoulder.

---

[17] Defendants' Exhibit A is the Plaintiff's deposition. The Court will refer to the deposition page numbers rather than the CM/ECF document page numbers. In Plaintiff's response he intermingles some deposition pages with other documents. We will refer to these by the CM/ECF document page number.

*Id.* Plaintiff was also complaining of left hip pain. *Id.* Nurse Vickery noted that he was "ambulating without a limp or other motions that indicate abnormality." *Id.* ( Plaintiff was seen by Dr. Mullins who, without examining the Plaintiff, concluded Plaintiff should be given anti-inflammatory medication. *Defts' Ex.* A. at 12.)

According to Plaintiff, Dr. Mullins refused his request to go to the hospital. *Defts' Ex.* A at 12. Plaintiff states Dr. Mullins initially prescribed him Ibuprofen despite the fact that Plaintiff had told him repeatedly that he could not take Ibuprofen or acetaminophen due to liver and kidney disease. *Id.* at ¶ 12; *Doc.* 49 at 42 & 85. Plaintiff continued to complain of leg pain. *Doc.* 49 at 86. Plaintiff was eventually prescribed tramadol and Aleve® and when used together these medications provided him with pain relief. *Defts' Ex.* A at 37-38; *Doc*. 49 at 87.

Plaintiff testified that he continues to have problems with his left leg. *Doc.* 49 at 56. He indicates his "sciatic nerve is pulled into two separate places" and he has "numbness and pain down both sides of his legs." *Id.* He testified he was receiving tramadol. *Id.*

In a report dated June 2, 2014, Corporal Mulvaney wrote that he spoke with Nurses Bradley and Meschede and they indicted there were not aware that Plaintiff had any liver problems. *Doc.* 49 at 134. Plaintiff was diagnosed with cirrohosis of the liver when sent to WRMC on January 24, 2014, and, by at least February 13, 2014, Nurse Vickery knew Plaintiff could not take Ibuprofen or Tylenol. *Id.* at 74, 140, 143, 149.

Plaintiff made a variety of complaints about the conditions under which he was jailed. He complained that there was black mold in the facility and that it caused him respiratory difficulties. *See e.g., Doc.* 49 at 6. He also stated that he was assigned to a top bunk despite the injury to his left leg and on one occasion fell off the bunk. *Id.* at 30.



AO72A
(Rev. 8/82)

He also objected to medications being dispensed by untrained personnel. *Doc.* at 30. He fell on one occasion over a door stop when he was in leg shackles, a belly chain, and handcuffs. *Id.* at 35. He complained about there being no emergency button in the look-down cells. *Id.* at 38. To get a response from WCDC personnel, Plaintiff testified that you had to beat on the door for as long as thirty-five minutes. *Id.*

With respect to Sheriff Helder, Plaintiff contends he should be held liable because he is the head officer and should have "more control over his employees about what's going on." *Defts' Ex.* A at 42. Plaintiff never had any conversations with Sheriff Helder. *Id.*

Plaintiff indicates Dr. Howard was the doctor who initially refused to give the Plaintiff his prescriptions. *Defts' Ex.* A at 42. Plaintiff alleges Dr. Howard substituted different medications and also prescribed Plaintiff the wrong medications. *Id.* at 43.

Plaintiff maintains Dr. Mullins gave him the wrong medication and failed to send him to the hospital. *Id.* With respect to Nurse Bradley, Plaintiff believes she thinks she runs the place and has a bad attitude. *Defts' Ex.* at 42. Plaintiff indicated you cannot see the doctor without seeing her first and she refuses to let you see the doctor. *Id.*

## II.  APPLICABLE STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that

AO72A
(Rev. 8/82)

a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing, Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

## III.  DISCUSSION

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States.  In order to state a claim under 42 U.S.C. § 1983, plaintiff must allege that the defendant acted under color of state law and that he violated a right secured by the Constitution. *West v. Atkins*, 487 U.S. 42 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir. 1999). The deprivation must be intentional; mere negligence will not suffice to state a claim for deprivation of a constitutional right under § 1983. *Daniels v. Williams*, 474 U.S. 327 (1986); *Davidson v. Cannon*, 474 U.S. 344 (1986).

Defendants contend they are entitled to judgment in their favor for the following reasons: (1) Sheriff Helder had no personal involvement in the Plaintiff's complaints regarding the conditions of his confinement or his medical care; (2) the named Defendants did not personally create, or were responsible for in anyway, the alleged unconstitutional conditions of confinement; (3) the medical Defendants were not deliberately indifferent to Plaintiff's serious

medical needs; (4) Plaintiff's claims for compensatory damages should be dismissed as he suffered no physical injury; (5) there is no basis for official capacity liability; and, (6) Defendants alternatively argue that they are entitled to qualified immunity.

**A. Individual Liability Claim Against Sheriff Helder**

Separate Defendant Sheriff Helder maintains he had no personal involvement in the medical care provided to the Plaintiff or in the particular conditions of confinement that Plaintiff maintains were unconstitutional. There is no allegation that Sheriff Helder was personally involved in responding to any of Plaintiff's requests/grievance; in deciding what medical attention should be provided; or that he was consulted about the alleged unconstitutional conditions of confinement.

"Section 1983 liability is personal. To recover § 1983 damages from [the Sheriff] individually, [the Plaintiff] must establish that [the Sheriff] was personally involved in, or directly responsible for," the alleged unconstitutional actions. *Dahl v. Weber*, 580 F.3d 730, 733 (8th Cir. 2009); *see also Ripson v. Alles*, 21 F.3d 805-808-09 (8th Cir. 1994)(same); *Mark v. Nix*, 983 F.2d 138, 139-40 (8th Cir. 1993)(same).

The Sheriff's general responsibility for supervising the jail is insufficient to establish personal involvement. *Reynolds v. Dormire*, 636 F.3d 976, 981 (8th Cir. 2011). I agree there is no basis on which the Sheriff may be held individually liable in this case. *See Reed v. City of St. Charles, Mo.,* 561 F.3d 788, 790-91 (8th Cir. 2009) (non-moving party may not merely point to unsupported self-serving allegations, but must substantiate his allegation with sufficient probative evidence that would permit a finding in his favor on more than speculation or conjecture). Sheriff Helder is entitled to dismissal of the individual capacity claims against him.

AO72A
(Rev. 8/82)

**B. Unconstitutional Conditions of Confinement**

The Eighth Amendment to the United States Constitution prohibits the imposition of cruel and unusual punishment. U.S. Const. amend. VIII. The Cruel and Unusual Punishment Clause of the Eighth Amendment forbids conditions that involve the "wanton and unnecessary infliction of pain," or are "grossly disproportionate to the severity of the crime." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833, 851 (1998)(citation omitted). The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

"The Eighth Amendment prohibits punishments that deprive inmates of the minimal civilized measure of life's necessities." *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996); *see also Hall v. Dalton*, 34 F.3d 648, 650 (8th Cir. 1994) ("[I]n this circuit, the standards applied to Eighth Amendment and Fourteenth Amendment claims have been the same."). Jail or prison officials must provide reasonably adequate ventilation, sanitation, bedding, hygienic materials, food, and utilities. Prison conditions claims include threats to an inmate's health and safety. *Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir. 2008)(citation omitted).

To state an Eighth Amendment claim the plaintiff must allege that prison officials acted with "deliberate indifference" towards conditions at the prison that created a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "Conditions of confinement, however, constitute cruel and unusual punishment 'only when they have a mutually enforcing

AO72A
(Rev. 8/82)

effect that produces deprivation of a single, identifiable human need such as food, warmth, or exercise.'" *Whitnack v. Douglas County*, 16 F.3d 954, 957 (8th Cir. 1994)(*quoting, Wilson v. Sieter*, 501 U.S. 294 (1991)).

This standard involves both an objective and subjective component. The objective component requires an inmate to show that "he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834 (citations omitted); *see also Hudson v. McMillian*, 503 U.S. 1, 2 (1992) (The objective component is "contextual and responsive to contemporary standards of decency.")(quotation omitted). To satisfy the subjective component, an inmate must show that prison officials had "a sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834 (citations omitted); *see also Brown v. Nix*, 33 F.3d 951, 954-55 (8th Cir. 1994).

I agree with Defendants that none of the alleged unconstitutional conditions of confinement identified by the Plaintiff offend contemporary standards of decency. Nor is there evidence to suggest any of the named Defendants acted with deliberate indifference to the conditions under which the Plaintiff was confined. There are no genuine issues of material fact as to whether the Plaintiff was deprived of reasonably adequate ventilation, sanitation, bedding, hygienic materials, food, and utilities.

With respect to the alleged presence of mold, Plaintiff was offered cleaning supplies daily but said it was "not my problem." *Doc.* 49 at 114. In connection with the bunk assignment, after his fall, Plaintiff was assigned to a bottom bunk in the bottom tier. Efforts were made to accommodate his alleged inability to safely get up and down from his bunk.

There is no constitutional requirement that medication be dispersed only by trained medical personnel. *See e.g., Breakiron v. Neal*, 166 F. Supp. 2d 1110, 1115 (N.D. Tex. 2001)

AO72A
(Rev. 8/82)

(“Prisoners have no constitutional right to have their medication dispensed by a licensed medical practitioners); *see also Dougherty v. Lakin*, No. 3:15-cv-00396, 2015 WL 2016345, *2 (S.D. Ill. May 1, 2015) (Practice of officers handing out medicine appears to be common and not, on its own, improper); *Booker v. Herman*, 2006 WL 2457230, *5 (N.D. Ind. Aug. 22, 2006) (“While it might be a good practice, tradition, or even state law to require that only medical staff can deliver medication, the Constitution does not prohibit guards from distributing medication to inmates. This allegation states no claim upon which relief can be granted”).

In connection with his fall, Plaintiff testified in his deposition that his claims were not based on the fall but the actions of WCDC following his fall. Finally, Plaintiff has alleged no harm by the failure of the lock-down cells to contain emergency buttons.

**C. Denial of Medical Care Claims & Qualified Immunity**

The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const. amend. VIII. “The government has an ‘obligation to provide medical care for those whom it is punishing by incarceration.’” *Allard v. Baldwin*, 779 F.2d 768, 771 (8th Cir. 2015)(*quoting Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).

“Deliberate indifference to an inmate’s serious medical needs violates the Eighth Amendment.” *Hartsfield v. Colburn*, 491 F.3d 394, 396 (8th Cir. 2007). “In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.” *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The deliberate indifference standard includes “both an objective and a subjective component: ‘The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.’” *Jolly*

AO72A
(Rev. 8/82)

*v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)(*quoting Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)).

"Deliberate indifference entails a level of culpability equal to the criminal law definition of recklessness, that is, a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Bender v. Regier*, 385 F.3d 1133, 1137 (8th Cir. 2004)(internal quotation marks and citation omitted). Plaintiff has demonstrated that he suffered from one or more serious medical needs. I believe he has also shown the existence of a genuine issue of material fact as to whether the medical Defendants exhibited deliberate indifference to his serious medical needs.

He has shown that just two days prior to his booking in on January 18, 2014, he was seen by his private physician and prescribed medication to alleviate the symptoms or impact his cirrhosis of the liver had on his health. At the WCDC, he was not provided with the necessary medications until sometime in March despite the fact that the medical staff learned of his cirrhosis of the liver and kidney disease at a minimum of several weeks prior to this time. Further, even after they were aware of Plaintiff's medical problems, they continued to prescribe medication that is contraindicated when a person has liver or kidney problems. When he was seen at the hospital and the physician there gave him four prescriptions, these were not filled. Also, at least initially, they ignored a note the physician targeted specifically at the jail medical staff advising them that the Plaintiff had to be restarted on certain medications.

While Defendants attempt to characterize this case as a simple difference in the type of treatment given, which would not constitute deliberate indifference, I think the summary judgment record indicates there are genuine issues of material fact as to whether his treatment

was more than merely disagreement with treatment. I note that the record contains no affidavits from the medical staff indicating why they provided different medications or why Plaintiff was given the treatment they chose.

"A plaintiff can show deliberate indifference in the level of care provided in different ways, including grossly incompetent or inadequate care, showing a defendants' decision to take an easier and less efficacious course of treatment, or showing a defendant intentionally delayed access to medical care." *Allard v. Baldwin*, 779 F.3d 768, 772 (8th Cir. 2015)(citations omitted). The mere provision of some medical care, does not disprove deliberate indifference. *Id.* Rather, "a plaintiff is entitled to prove his case by establishing the course of treatment, or lack thereof, so deviated from professional standards that it amounted to deliberate indifference." *Id.* (citation and internal quotation marks omitted).

**D. Qualified Immunity**

"Government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)(*quoting, Malley v. Briggs*, 475 U.S. 335, 341, 343 (1986)).

"To overcome the defense of qualified immunity, a plaintiff must show: (1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and, (2) the right was clearly established at the time of the deprivation."

AO72A
(Rev. 8/82)

*Howard v. Kansas City Police Dep't.*, 570 F.3d 984, 988 (8th Cir. 2009). The right of a detainee or prisoner to medical treatment is clearly established. *McRaven v. Sanders*, 577 F.3d 974, 980 (8th Cir. 2009)(citation omitted). Here, as discussed above, the Plaintiff has objectively demonstrated a medical need, and that the subjective knowledge of each defendant . . . is a disputed material fact." *Id.*

**E. Compensatory Damages and the Physical Injury Requirement**

Defendants next argue the lack of a physical injury bars a claim for compensatory damages. Section 1997e(e) of the Prison Litigation Reform Act provides as follows: "No Federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).

The provision limits the available damages in the absence of a physical injury but does not preclude a Plaintiff from pursuing a claim. *See Royal v. Kautzky*, 375 F.3d 720, 723 (8th Cir. 2004) (The physical injury requirement of the PLRA "limit[ed] recovery for mental or emotional injury in all federal actions brought by prisoners" but does not bar the recovery of nominal and punitive damages). I believe the summary judgment record establishes genuine issues of material fact as to whether the Plaintiff suffered physical injury due to the alleged lack of prescription medication and adequate medical care. Plaintiff testified that when he did not have his "liver medications" that he suffered nausea, dizziness, cold sweats, constipation, bloating, and felt like he was going to pass out. He also believed he would not have had the problem with kidney stones if he had received adequate treatment.

AO72A
(Rev. 8/82)

**F. Official Liability Claims**

Defendants maintain they are entitled to judgment in their favor on all official capacity claims. Official capacity claims are "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). In other words, the official capacity claims are treated as claims against Washington County. *See Murray v. Lene*, 595 F.3d 868, 873 (8th Cir. 2010).

"[I]t is well established that a municipality cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). To establish Washington County's liability under § 1983, "plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009)(citation omitted).

Here, Plaintiff has pointed to no custom or policy of Washington County that was the moving force behind the violations of his constitutional rights. Defendants are therefore entitled to summary judgment in their favor on the official capacity claims.

**IV. CONCLUSION**

For the reasons stated above, I recommend that Defendants' Motion for Summary Judgment (Doc. 44) be **GRANTED IN PART** and **DENIED IN PART.** Specifically, I recommend it be granted with respect to all claims against Sheriff Helder and all official capacity claims. In all other respects, the Motion should be denied.

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file**

**timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 30th day of June, 2015.

/s/ Mark E. Ford
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)